1  Dario de Ghetaldi - Bar No. 126782
   Jerry E. Nastari - Bar No. 151756
2  Amanda L. Riddle - Bar No. 215221
   COREY, LUZAICH, PLISKA, DE GHETALDI & NASTARI LLP
3  700 El Camino Real
   P.O. Box 669
4  Millbrae, California  94030-0669
   Telephone: (650) 871-5666
5  Facsimile: (650) 871-4144

6  Colleen Duffy Smith - Bar No. 161163
   Michael G. Reedy - Bar No. 161002
7  MCMANIS, FAULKNER & MORGAN
   50 West San Fernando Street, Suite 1000
8  San Jose, CA 95113
   Telephone: (408) 279-8700
9  Facsimile: (408) 279-3244

10 Plaintiffs' Co-Counsel
   [Other Counsel on Signature Page]
11
   PETER D. KEISLER
12 SCOTT N. SCHOOLS
   SHEILA M. LIEBER
13 PETER ROBBINS
   U.S. Department of Justice
14 20 Massachusetts Ave, NW, Room 7142
   Washington, DC  20530
15 Telephone:    (202) 514-3953
   Facsimile:    (202) 616-8470
16 Email:  peter.robbins@usdoj.gov

17 Attorneys for Defendant

18
                IN THE UNITED STATES DISTRICT COURT
19
                  NORTHERN DISTRICT OF CALIFORNIA
20

21 COUNTY OF SANTA CRUZ, et al.         )   Case No. C 07-2888 MJJ
22                                      )
              Plaintiffs,               )
23                                      )   **JOINT INITIAL CASE MANAGEMENT**
           v.                           )   **STATEMENT**
24                                      )
   MICHAEL O. LEAVITT,                  )
25                                      )
              Defendant.                )
26 _____)
27
28

1    Pursuant to the Standing Order of this Court, the parties in the above-captioned action hereby

2  submit the following joint case management statement:

3    **1. Jurisdiction and Service**.

4    No parties remain to be served. Plaintiffs' complaint alleges that subject-matter jurisdiction

5  exists under 42 U.S.C. § 405(g) and 28 U.S.C. § 1331. Class Action Complaint ("Compl.") at ¶¶ 33-

6  41. Defendant disputes that subject-matter jurisdiction exists. Venue is not at issue.

7    **2. Facts**

8    Title XVIII of the Social Security Act, commonly known as the Medicare Act, 42 U.S.C.

9  §§ 1395, et seq., establishes a program of health insurance for the elderly and disabled. Medicare

10  Part B covers the services of physicians and other medical suppliers. 42 U.S.C. §§ 1395j-1395w-4.

11  Physicians and other "suppliers" are reimbursed under Part B for physicians' services based on a fee

12  schedule published by the Secretary of Health and Human Services. 42 U.S.C. § 1395w-4. The

13  physician fee-schedule payment methodology went into effect in 1992, pursuant to § 6102(a) of the

14  Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106, 2169-84 (1989).

15  Prior to that time, Part B reimbursement for physicians' services was determined under a method that

16  used "reasonable charges" as a benchmark. 42 U.S.C. § 1395l(a)(1) (1988).

17    In connection with the fee schedule, the Secretary is required to establish "geographic

18  adjustment factors," 42 U.S.C. § 1395w-4(e), that are based on indexes that reflect relative costs in

19  "fee schedule areas." See 42 U.S.C. §§ 1395w-4(e)(1)(A) (i)-(iii), (e)(1)(C), (e)(1)(D), (e)(2)-(5).

20  The "term 'fee schedule area' means a locality" used by Medicare contractors under 42 U.S.C.

21  § 1395u(b) to determine reasonable charges under the payment regime that preceded the fee-

22  schedule regime. 42 U.S.C. § 1395w-4(j)(2). Regulations promulgated by the Secretary interpret

23  this statutory language as requiring him to "establish[] physician fee schedule areas that generally

24  conform to the geographic localities in existence before January 1, 1992," 42 C.F.R. § 414.4(a), but

25  also as authorizing him to make "changes to fee schedule areas." 42 C.F.R. § 414.4(b).

26    The fee-schedule areas that were established in 1992 primarily copied the localities

27  previously developed by Medicare contractors on the basis of their "knowledge of local medical

28  practice and economic conditions" gained in connection with their processing of Part B claims under

1

1  the reasonable-charges regime. 56 Fed. Reg. 59,502, 59,514 (Nov. 25, 1991). Between 1992 and

2  1996, the Secretary converted multiple-intrastate fee schedule areas into single-statewide fee

3  schedule areas in six states. 59 Fed. Reg. 63,410, 63,416 (Dec. 8, 1994); 58 Fed. Reg. 63,626,

4  63,637-38 (Dec. 2, 1993); 56 Fed. Reg. at 59,514. In 1996, the Secretary revised the fee schedule

5  areas on a nationwide basis in response to concerns that "changing economic conditions and

6  demographic conditions warrant a comprehensive review and revision of payment localities." 61

7  Fed. Reg. 59,490, 59,494 (Nov. 22, 1996). No nationwide revision has occurred since 1996. For

8  the past four years, the Secretary has been considering whether the fee schedule areas should be

9  revised again and has asked interested parties to submit comments. See, e.g.,72 Fed. Reg. 38,122,

10  38,139 (July 12, 2007); 68 Fed. Reg. 49,030, 49,044 (Aug. 15, 2003).

11  Plaintiffs contend that Medicare's own economic and demographic data show that –

12  employing the same benchmarks and methods used by the Secretary in 1996 – a nationwide revision

13  of fee schedule areas should have been undertaken as early as 2001.

14  Defendant contends that no such revision was required in 2001, and that the timing of any

15  revisions in fee schedule areas is committed to his discretion by law.

16  **3. Legal Issues**

17  Plaintiffs believe there are no cases which address the general issue of the Secretary's failure

18  revise the fee schedule area (or "locality") structure. Plaintiffs contend that because Medicare

19  payments in multi-county localities are based on average costs throughout the locality, payments to

20  suppliers in high-cost counties in multi-county localities are brought down by low costs in other

21  counties in their localities, and payments to suppliers in low-cost counties in multi-county localities

22  are brought up by the averaging method. Plaintiffs further contend that as a combined result of the

23  dramatic cost changes known to Medicare as early as 2001 and Medicare's failure to modify any

24  affected locality, physicians and other suppliers in the high-cost counties in multi-county localities

25  are receiving disproportionately less for their services than they should relative to the national

26  average, while physicians and other suppliers in the low-cost counties in their localities are receiving

27  disproportionately more. As the Secretary stated in December 2006:

28  "Because the [Geographic Practice Cost Indexes ("GPCIs")] for each locality are
calculated using the average of the county-specific data from all of the counties in

2

1   the locality, removing high cost counties from a locality will result in lower GPCIs
2   for the remaining counties." (71 FR 69655.)

3   Plaintiffs have currently identified the following legal issues.

4   (A) Whether the Secretary has acted unconstitutionally and without authority in failing and
5   refusing to modify the locality structure to ensure that suppliers are appropriately and equitably
6   compensated for services provided to Medicare beneficiaries under Part B;

7   (B) Whether the Secretary has denied Plaintiffs and Members of the Class equal protection
8   of the law and/or has deprived Plaintiffs and Members of the Class of property interests without due
9   process of law by failing to revise the locality structure;

10   (C) Whether 42 U.S.C. § 1395w-4(j)(2) and/or 42 C.F.R. § 414.4 are unconstitutional as
11   applied to Plaintiffs and Members of the Class;

12   (D) Whether the Secretary has unlawfully withheld or unreasonably delayed the
13   reconfiguration of the locality structure since 2001;

14   (E) Whether the Secretary should be compelled to initiate appropriate action to modify the
15   current locality structure to rectify underpayments to Plaintiffs and Members of the Class;

16   (F) Whether the Secretary's failure to reconfigure the current locality structure is arbitrary,
17   capricious, or an abuse of discretion;

18   (G) Whether the Secretary's failure to reconfigure the current locality structure has denied
19   Plaintiffs and Members of the Class a statutory right under 42 U.S.C. § 1395w-4 to receive payments
20   for services provided under Part B of Medicare that reflect the costs of the services they provide
21   relative to the national average of those costs;

22   (H) Whether the Secretary has unlawfully delegated its duty to reconfigure localities to state
23   medical associations;

24   (I) Whether the Secretary has the statutory authority to impose statewide budget neutrality
25   on a locality conversion;

26   (J) Whether the Secretary has statutory authority to modify GPCIs in conjunction with
27   locality changes; and

28   (K) The type and amount of relief available to Plaintiffs and Members of the Class.

3

1    Defendant has currently identified the following legal issues:

2    (A)  The establishment of fee-schedule areas is a necessary part of the "establishment of

3    geographic adjustment factors" and is not subject to judicial review under 42 U.S.C. § 1395w-

4    4(i)(1)(D) (exempting agency actions under 42 U.S.C. § 1395w-4(e) from review).  Subject-matter

5    jurisdiction is therefore precluded under 42 U.S.C. §§ 1395ff, 1395ii (incorporating 42 U.S.C.

6    §§ 405(g), 405(h)) and 5 U.S.C. § 701(a)(1).[1]  Subject-matter jurisdiction also is precluded under

7    5 U.S.C. § 701(a)(2) because the broad language in 42 U.S.C. § 1395w-4(j)(2) does not create a

8    meaningful standard by which this Court could determine when a nationwide revision of fee

9    schedule areas is required by law.[2]

10    (B)  If the establishment of fee schedule areas were reviewable, subject-matter jurisdiction

11    still would be precluded under 42 U.S.C. § 1395ii (incorporating 42 U.S.C. § 405(h)) because

12    plaintiffs have not properly presented their claims or exhausted the Medicare claims process.[3]

13    (C)  Even if subject-matter jurisdiction existed, there would be no merit in plaintiffs' claim

14    that agency action has been unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1),

15    because the statutory scheme contains no "'specific, unequivocal command," about which the

16    Secretary "has no discretion whatever," to revise fee schedule areas, either according to some time

17    frame or in response to any particular set of economic or demographic changes.[4]

18    _____

19    [1] See Am. Soc'y of Cataract & Refractive Surgery v. Thompson, 279 F.3d 447, 452-55 (7th
Cir. 2002); Painter v. Shalala, 97 F.3d 1351, 1355-56 (10th Cir. 1996); AMA v. Thompson, 2001 WL
20    619510 at *3-5 (N.D. Ill. May 29, 2001); Am. Soc'y of Anesthesiologists v. Shalala, 90 F. Supp. 2d
973, 974-76 (N.D. Ill. 2000).

21    [2] See Lincoln v. Vigil, 508 U.S. 182, 191 (1993); Webster v. Doe, 486 U.S. 593, 599-600
22    (1988); Heckler v. Chaney, 470 U.S. 821, 830 (1985); S. Ry. Co. v. Seabord Allied Milling Corp.,
442 U.S. 444, 455-56 (1979); Citizens to Preserve Overton Park. Inc. v. Volpe, 401 U.S. 402, 410
23    (1971); Or. Natural Res. Council v. Thomas, 92 F.3d 792, 798-99 (9th Cir. 1996); Nevada v.
Watkins, 914 F.2d 1545, 1563-64 (9th Cir. 1990); Clementson v. Brock, 806 F.2d 1402, 1404 (9th Cir.
24    1986); Rank v. Nimmo, 677 F.2d 692, 699-700 (9th Cir. 1982); Ariz. Power Auth. v. Morton, 549
F.2d 1231, 1239 (9th Cir. 1977); Ferry v. Udall, 336 F.2d 706, 712 (9th Cir. 1964).

25    [3] See Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 10-25 (2000); Heckler
26    v. Ringer, 466 U.S. 602, 616-23 (1984); Weinberger v. Salfi, 422 U.S. 749, 757 (1975); Nat'l Kidney
Patients Ass'n v. Sullivan, 958 F.2d 1127, 1130-34 (D.C. Cir. 1992).

27    [4] Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 63 (2004); see also Lujan v.
28    Nat'l Wildlife Fed'n, 497 U.S. 871, 891 (1990); Gros Ventre Tribe v. United States, 469 F.3d 801,
814 (9th Cir. 2006), cert. denied, 2007 WL 1768286 (Oct. 1, 2007); Ctr. for Biological Diversity v.
Veneman, 394 F.3d 1108, 1111-13 (9th Cir. 2005).

4

1     (D)  Even if subject-matter jurisdiction existed, there would be no merit in plaintiffs' claim

2 that the complained-of failure to reconfigure fee schedule areas is arbitrary and capricious, 5 U.S.C.

3 § 706(2)(A), because an alleged "failure to act"[5] is not "final action" potentially subject to review

4 under the Administrative Procedure Act, 5 U.S.C. § 704, and, in any event, it is reasonable to study

5 the issue carefully before launching on a nationwide revision.  In addition, monetary damages are

6 not available under the Medicare Act, 42 U.S.C. § 1395ff(b)(1) (incorporating 42 U.S.C. § 405(g)),

7 or under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.  The damages claim

8 therefore fails for lack of a waiver of sovereign immunity.[6]

9     (E)  Even if subject-matter jurisdiction existed, there would be no merit in plaintiffs' due-

10 process claims and equal protection claims because states and their political subdivisions are not

11 persons within the meaning of the Fifth Amendment.[7]

12     (F)  Plaintiffs' due-process claim also fails because a supplier that chooses to treat Medicare

13 patients has no property right to payment in any amount that exceeds the published fee schedule,[8]

14 and nothing in the Medicare statute gives suppliers a right to expect that fee schedule areas will be

15 reconfigured on the basis of any particular set of economic or demographic conditions.

16     (G)  Plaintiffs' equal-protection claim also fails because they have not identified any class

17 of suppliers that have been treated more favorably than they have been treated, and, in any event,

18 there is a rational basis for the Secretary's approach to the possible revision of fee schedule areas.

19 /  /  /

20 /  /  /

21 /  /  /

22 /  /  /

23

---

24    [5] Southern Utah, 542 U.S. at 63.

25    [6] See Franconia Assocs. v. United States, 536 U.S. 129, 141 (2002); United States v. King, 395 U.S. 1, 4 (1969)).

26
27    [7] South Carolina v. Katzenbach, 383 U.S. 301, 323-24 (1966); Premo v. Martin, 119 F.3d 764, 771 (9th Cir. 1997); Ariz. State Dep't of Pub. Welfare v. HEW, 449 F.2d 456, 478 (9th Cir. 1971); Cruz v. United States, 387 F. Supp. 2d 1057, 1067 (N.D. Cal. 2005).

28    [8] Cataract & Refractive Surgery, 279 F.3d at 454-56; Painter, 97 F.3d at 1356-58; AMA, 2001 WL 619510 at *6-7.

1        (H) Even if subject-matter jurisdiction existed, there would be no merit in plaintiffs' claim

2    based on the non-delegation doctrine because the Secretary has not conferred any ultimate decision-

3    making power on private parties.[9]

4        (I) The Counties of Santa Barbara, San Luis Obispo, San Diego and Monterey lack standing

5    because they do not operate facilities that are suppliers participating in Medicare Part B.

6        (J) To the extent that plaintiffs are attempting to challenge the Secretary's statutory authority

7    to have undertaken the 1996 revision of fee schedule areas, their claim is time-barred.  28 U.S.C.

8    § 2401(a).

9    **4. Motions**

10       Plaintiffs anticipate filing a motion for class certification and a motion to appoint class

11   counsel in the spring of 2008 and may, if appropriate, file a motion for summary judgment and/or

12   adjudication.  Defendant anticipates that he will file a motion to dismiss and a motion for a

13   protective order with respect to any discovery issues that remain unresolved in this scheduling

14   report.  If the motion to dismiss is denied in whole or in part, defendant anticipates that he will file

15   a motion for summary judgment.

16   **5. Amendment of Pleadings**

17       The parties do not anticipate amendment of pleadings, however plaintiffs do not wish to rule

18   out the possibility if the need arises.

19   **6. Evidence Preservation**

20       Plaintiffs believe that preservation of evidence is necessary and will send a formal request

21   to defendant to ensure that it is done.  Defendant would be happy to consider any request made by

22   plaintiffs in this regard and do everything practicable to accommodate it.

23   / / /

24   / / /

25

26       [9] See Sunshine Anthracite Coal. Co. v. Adkins. 310 U.S. 381, 388 (1940); United States v.

27   Rock Royal Co-Op, Inc., 307 U.S. 533, 577-78 (1939); Currin v. Wallace, 306 U.S. 1, 15-16 (1939); St. Louis, Iron Mountain, & S. Ry. v. Taylor, 210 U.S. 281, 287 (1908); Buttfield v. Stranahan, 192

28   U.S. 470, 492-97 (1904); Butte City Water Co. v. Baker, 196 U.S. 119, 126-27 (1905); EMR Network v. FCC, 391 F.3d 269, 273 (D.C. Cir. 2004); Cospito v. Heckler, 742 F.2d 72, 88 (3d Cir. 1984); NARUC v. FCC, 737 F.2d 1095, 1144 (D.C. Cir. 1984).

6

1  **7. Disclosures**

2      Plaintiffs believe that initial disclosures are appropriate. Defendant believes that the case

3  is exempt from the initial disclosure requirement under Fed. R. Civ. P. 26(a)(1)(E)(i) because this

4  is a record-review case.[10]

5      **8. Discovery**

6      No discovery has taken place. Because this is a record-review case, defendant believes that

7  discovery is not appropriate, but, in any event, the issue should be postponed until after resolution

8  of defendant's motion to dismiss. If initial disclosures are made, plaintiffs agree with defendant that

9  the scheduling of discovery should be postponed pending resolution of defendant's motion to

10  dismiss.

11      **9. Class Issues**

12      The parties agree that class-certification issues should be postponed pending resolution of

13  defendant's motion to dismiss.

14      Plaintiffs' position on class certification is as follows: The specific paragraphs of Fed. R.

15  Civ. P. 23 under which the action is maintainable as a class action are those described in subds.

16  (b)(1), (b)(2), and (b)(3). The class in whose behalf the action is brought is defined as:

17          All physicians, practitioners and other persons or entities in the United States
           (including the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American
18          Samoa and the Northern Mariana Islands): (a) who are "suppliers" as that term is
           defined in 42 U.S.C. § 1395x(d); (b) who have furnished and provided "medical and
19          other health services" as that term is defined in 42 U.S.C. § 1395x(s) to Medicare
           beneficiaries under United States Code, Title 42, Chapter 7, Subchapter XVIII, Part
20          B, "Health Insurance for Aged and Disabled" from March 14, 2001 to the present;
           (c) who have accepted assignments for all items or services furnished to the
21          beneficiaries that are at issue herein; (d) who have waived all rights for payment
           from any beneficiary with respect to all items or services at issue herein; and (e) who
22          have provided such medical and other health services in counties located in fee
           schedule areas where the GAF of the county in which the medical and other health
23          services were provided exceeded the weighted average GAF of the remaining
           counties in the fee schedule area by 5%.
24

25  Facts showing that plaintiffs are entitled to maintain the action under Fed. R. Civ. P. 23(a) and (b)

26  are set forth in plaintiffs' complaint in detail. Briefly, there are common issues of law and fact

27

28      [10] See, e.g., Florida Light & Power Co. v. Lorion, 470 U.S. 729, 744 (1985) (APA);
    MacKenzie Med. Supply, Inc. v. Leavitt, 419 F. Supp. 2d 766, 770 (D. Md. 2006) (Medicare Act).

7

1  because all class members provided services in counties that should have been reclassified as

2  separate payment localities, which would have resulted in raising the repayment rates to class

3  members.   The number of class members is believed to be over 100,000, making joinder

4  impracticable.  Plaintiffs' claims are typical and they will adequately represent the class.  Finally,

5  plaintiffs are represented by counsel who are experienced in class action litigation.

6       Defendant opposes class certification and disputes every argument made by plaintiffs.

7  **10. Related cases**

8       Plaintiffs contend that there are two related cases.  The first, <u>County of Santa Cruz, et al. v.</u>

9  <u>Centers for Medicare and Medicaid Services,</u> No. 07 C-02889-MCC (filed 6/4/2007, N.D.Ca.) seeks

10 injunctive relief under FOIA compelling Medicare to produce documents relating to the underlying

11 data used by Medicare to calculate GPCIs, RVUs, and GAFs during the relevant period of this action.

12 The second is a class action filed by private individuals on behalf of themselves and a putative class

13 of other Medicare beneficiaries who allegedly overpaid their physicians and other suppliers as a

14 result of the Secretary's failure to modify the fee schedule areas, <u>Marchetti v. Leavitt,</u> No. 07-cv-

15 1179-FCD-KJM (filed 6/18/2007, E.D.Ca.).  Defendant does not believe that either of these is a

16 "related case."

17     **11. Relief**

18      Plaintiffs describe the relief they seek as follows:  Plaintiffs seek declaratory relief,

19 injunctive relief, and damages in the approximate amount of $2.5 billion.  Plaintiffs' damages are

20 calculated based on: (a) what plaintiffs and the class members would have received if, when

21 Medicare's internal data showed that the 5% iterative threshold had been reached by a particular

22 county, defendant would have reapplied the 5% iterative method that was used in 1996 to create new

23 localities; less (b) what plaintiffs and the class members actually received.  The closely estimated

24 county-by-county amount of those damages is shown on Exhibit 4 to plaintiffs' complaint.

25      Defendants believe that damages are not authorized as a remedy under either the Medicare

26 Act, 42 U.S.C. § 1395ff, or the APA, 5 U.S.C. § 701-706, and therefore there is no need to consider

27 a method of computation of damages.  If changes in Part B payment determinations that have been

28 previously made were to come about as a result of the resolution of this action, the only mechanism

8

1    that could hypothetically be used to effect retroactive changes of this kind would be a remand to the

2    Secretary with instructions to revise individual non-final payment determinations.

3    **12. Settlement and ADR**

4        Plaintiffs believe that mediation would be productive.  Defendant believes that the

5    programmatic nature of this case makes alternative dispute resolution inappropriate.

6    **13. Consent to Magistrate Judge for All Purposes**

7        This case was originally assigned to Magistrate Judge Chen, to whom plaintiffs had no

8    objection.  Defendant objected to having the proceedings decided by a magistrate judge.

9    **14. Other References**

10        The parties agree that reference to binding arbitration or to a special master would not be

11    appropriate for this case. Plaintiffs are prepared to move the Judicial Panel on Multidistrict

12    Litigation for an order transferring the related case filed in the Eastern District to the Northern

13    District and consolidating all three related cases. Defendant opposes consolidation of this action with

14    either of the actions that plaintiffs have characterized as being "related cases."

15    **15. Narrowing of Issues**

16        The parties agree that the resolution of defendant's motion to dismiss may either narrow

17    issues or determine certain issues in favor of one party or the other.

18    **16. Expedited Scheduling**

19        Plaintiffs believe that expedited scheduling is necessary because the Secretary's failure to

20    modify the fee schedule area structure since 1996 has significantly contributed to a national health

21    care crisis.  Defendant believes that expedited scheduling is not appropriate for this case.

22    **17. Scheduling**

23        Plaintiffs believe it would be appropriate to schedule trial in this matter for October 2008,

24    and schedule a hearing on plaintiffs' motion to certify a class for the spring of 2008. Plaintiffs will

25    submit a detailed schedule to the Court at the time of the conference. Defendant believes that further

26    scheduling should be postponed until after this Court rules on his motion to dismiss.

27    / / /

28    / / /

9

1      **18. Trial**

2          Plaintiffs believe that trial in this matter will take ten to fifteen days.  Defendant believes

3  that, even if plaintiffs' complaint could survive a motion to dismiss, resolution by a trial would not

4  be appropriate because Medicare and APA review is limited to an administrative record.

5      **19. Disclosure of Non-Party Interested Entities or Persons**

6          Plaintiffs' counsel are not aware of the existence of non-party interested persons or entities

7  other than putative class members, and will submit the appropriate certificates at the time of the

8  conference.  This requirement does not apply to defendant.

9      **20. Other Matters**

10          Not applicable.

11                        Respectfully submitted,

12  Dated: October 9, 2007        COREY, LUZAICH, PLISKA, DE GHETALDI & NASTARI LLP

13

14                        By:   /s/ Dario de Ghetaldi
                                  DARIO DE GHETALDI

15                                  Attorneys for Plaintiffs and Members of the Class

16

17  Dated: October 9, 2007                Respectfully submitted,

18                        By:   /s/ Peter Robbins

19                                  PETER ROBBINS
                                  Department of Justice

20                                  20 Massachusetts Avenue, N.W., Room 7142
                                  Washington, D.C.  20530

21                                  Tel:  (202) 514-3953
                                  Attorneys for Defendant

22

23

24

25

26

27

28

10

1          **ADDITIONAL COUNSEL FOR PLAINTIFFS**

2    Dana M. McRae - Bar No. 142231                James B. Lindholm - Bar No. 43513
     Santa Cruz County Counsel                     San Luis Obispo County Counsel
3    Office of the County Counsel                  Patricia Gomez - Bar No. 122536
     Government Center, County of Santa Cruz        Deputy San Luis Obispo County Counsel
4    701 Ocean Street, Room 505                    Office of the County Counsel
     Santa Cruz, CA 95060                          1055 Monterey Street, Suite D320
5    Tel: 831-454-2040                             San Luis Obispo, CA 93408
     Fax: 831-454-2115                             Tel: 805-781-5400
6    Attorneys for the County of Santa Cruz         Fax: 805-781-4221
                                                   Attorneys for the County of San Luis Obispo
7    Steven M. Woodside - Bar No. 58684
     Sonoma County Counsel                         Charles J. McKee - Bar No. 152458
8    Office of the County Counsel                  Monterey County Counsel
     575 Administration Drive, Suite 105A          William M. Litt - Bar No. 166614
9    Santa Rosa, CA 95403                          Deputy Monterey County Counsel
     Tel: 707-565-2421                             Office of the County Counsel
10   Fax: 707-565-2624                             168 West Alisal Street, 3rd Floor
     Attorneys for the County of Sonoma            Salinas, CA 93901
11                                                 Tel: 831-755-5045
     John J. Sansone - Bar No. 103060              Fax: 831-755-5283
12   San Diego County Counsel                      Attorneys for the County of Monterey
     Office of the County Counsel
13   County Administration Center
     1600 Pacific Highway, Room 355
14   San Diego, CA 92101
     Tel:619-531-4860
15   Fax: 619-531-6005
     Attorneys for the County of San Diego
16
     Patrick K. Faulkner - Bar No. 70801
17   Marin County Counsel
     Jack F. Govi - Bar No. 88483
18   Assistant Marin County Counsel
     Mari-Ann Gibbs Rivers - Bar No. 117053
19   Deputy Marin County Counsel
     Office of the County Counsel
20   3501 Civic Center Drive, Suite 303
     San Rafael, CA 94903
21   Tel: 415-499-6117
     Fax: 415-499-3796
22   Attorneys for the County of Marin

23   Stephen Shane Stark - Bar No. 63779
     Santa Barbara County Counsel
24   Celeste E. Andersen - Bar No. 141965
     Deputy Santa Barbara County Counsel
25   Office of the County Counsel
     105 East Anapamu, Suite 201
26   Santa Barbara, CA 93101
     Tel: 805-568-2950
27   Fax: 805-568-2982
     Attorneys for the County of Santa Barbara

28

1                            **PROOF OF SERVICE**

2

3      I, the undersigned, declare that I am over the age of 18 years and not a party to the within cause; my business address is 700 El Camino Real, Millbrae, California 94030.

4      I served the document(s) listed below as follows:

5      Date Served:         October 9, 2007

6      Document Served:    **JOINT INITIAL CASE MANAGEMENT STATEMENT**

7      Parties Served:      See attached list.

8 ☒   **(BY MAIL)** I placed a true and correct copy of the document(s) in a sealed envelope with first class certified return-receipt requested postage fully prepaid in the United States Mail

9     at Millbrae, California, addressed as shown on the attached list.

10 ☐   **(BY PERSONAL SERVICE)** I served a true and correct copy of the document(s) by delivering them to the persons shown on the attached list.

11

12 ☐   **(BY FEDERAL EXPRESS)** I sent a true and correct copy of the document(s) for delivery to the persons shown on the attached list in accordance with standard Federal Express Overnight delivery procedures.

13

14 ☐   **(BY FAX)** I transmitted by facsimile a true and correct copy of the document(s) to the persons shown on the attached list.

15 ☐   (State)    I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct.

16

17 ☒   (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

18 The original of any document filed with the court was printed on recycled paper.

19      Executed on October 9, 2007, at Millbrae, California.

20

21                            *Susan J. Karnacki*
                           Susan J. Karnacki

22

23

24

25

26

27

28

1

1                                    Service List

2    **Celeste E. Andersen**
     Office of the County Counsel
3    105 East Anapamu, Suite 201
     Santa Barbara, CA 93101
4
     **Patricia Gomez**
5    Office County Counsel
     1055 Monterey St #D320
6    San Luis Obispo, CA 93408

7    **James Lindholm**
     Office of the County Counsel
8    1055 Monterey Street, Suite D320
     San Luis Obispo, CA 93408
9
     **Charles Joseph McKee**
10   Office of the County Counsel
     County of Monterey
11   168 West Alisal Street
     Third Floor
12   Salinas, CA 93901

13   **John James Sansone**
     Office of the County Counsel
14   1600 Pacific Highway, Room 355
     San Diego, CA 92101
15
     **Stephen Shane Stark**
16   Office of the County Counsel
     105 E Anapamu St Suite 201
17   Santa Barbara, CA 93101-2000

18   **Steven M. Woodside**
     County of Sonoma
19   575 Administration Dr.  Rm. 105
     Santa Rosa, CA 95403-2815
20

21

22

23

24

25

26

27

28

                                        2