IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA CRUZ COUNTY, | No. C07-02888 MJJ |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| MICHAEL O. LEAVITT, | |
| Defendant. | |

## INTRODUCTION

Before the Court is Defendant Michael O. Leavitt's ("Defendant") Motion To Dismiss. (Docket No. 40.) For the following reasons, the Court **GRANTS** Defendant's Motion. The Court **DISMISSES** Plaintiffs' statutory claims (the fifth, sixth, and seventh causes of action) for lack of subject matter jurisdiction under 42 U.S.C. § 1395w-4(i)(1)(D). The Court **DISMISSES** Plaintiffs' Fifth Amendment due process and equal protection claims (the first, second, third and fourth causes of action) for failure to state a claim because the named Plaintiffs, which are all political subdivisions of the State of California, do not qualify as "persons" within the meaning of the Fifth Amendment. Finally, the Court **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' unlawful delegation claim (the eighth cause of action) because Plaintiffs have not adequately pleaded the claim in a manner that demonstrates it has a constitutional basis that might confer subject matter jurisdiction on this Court.

**FACTUAL BACKGROUND**

Plaintiffs, several California counties that provide Part B Medicare services, contend that changing demographics have resulted in relative cost changes that meet or exceed the regulatory thresholds for modifying "fee schedule areas" or "localities" established by Medicare in 1996. The fee schedule controlling payments to physicians providing Part B Medicare services is determined by a formula set forth in 42 U.S.C. § 1395w-4. The formula consists of three core components calculated together in a multi-step process. One of these core components is the "geographic adjustment factor", which takes into account the variance in costs for doctors working in different parts of the country. A geographic adjustment factor is established for every "fee schedule area" in the United States on the basis of the relative costs of practicing medicine, the relative costs of malpractice insurance, and the relative value of physician work effort in the different fee schedule areas. The term "fee schedule area" is defined as "a locality" used "for purposes of computing payment amounts for physicians' services", under the payment regime that preceded the present fee schedule regime. 42 U.S.C. § 1395w-4(j)(2).

Plaintiffs contend that Medicare has refused to implement its own policy to revise the affected localities and redraw the "fee schedule areas" to reflect the true economic costs of the services provided by Plaintiffs. Plaintiffs' putative class action complaint asserts eight causes of action challenging Defendant's determination and application of the fee schedule areas. Plaintiffs seek declaratory and injunctive relief, as well as more than $2.4 billion in compensation for underpayments under Part B Medicare reimbursement.

Plaintiffs' complaint asserts eight causes of action. The first, second, third and fourth causes of actions assert various equal protection and due process claims grounded in the Fifth Amendment. The fifth, sixth and seventh causes of action assert statutory claims grounded in the Administrative Procedure Act and the Medicare Act. The eighth cause of action asserts that Medicare has unlawfully delegated its duty to reconfigure Part B payment localities to state medical associations.

Defendant now moves to dismiss Plaintiff's claims on Rule 12(b)(1) and 12(b)(6) grounds.

///

///

**LEGAL STANDARD**

**A.    Rule 12(b)(1).**

Rule 12(b)(1) authorizes a party to move to dismiss a claim for lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction; thus, the Court presumes lack of jurisdiction, and the party seeking to invoke the court's jurisdiction bears the burden of proving that subject matter jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). A party challenging the court's jurisdiction under Rule 12(b)(1) may do so by raising either a facial attack or a factual attack. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

A facial attack is one where "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In evaluating a facial attack to jurisdiction, the Court must accept the factual allegations in plaintiff's complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001). For a factual attack, in contrast, the Court may consider extrinsic evidence. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Further, the court does not have to assume the truthfulness of the allegations, and may resolve any factual disputes. *See White*, 227 F.3d at 1242. Thus, "[o]nce the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or evidence properly before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

In the Ninth Circuit, "[j]urisdictional dismissals in cases premised on federal-question jurisdiction are exceptional, and must satisfy the requirements specific in *Bell v. Hood*, 327 U.S. 678 [] (1946)." *Sun Valley Gas., Inc. v. Ernst Enters.*, 711 F.2d 138, 140 (9th Cir. 1983); *see Safe Air for Everyone*, 373 F.3d at 1039. The *Bell* standard provides that jurisdictional dismissals are warranted "where the alleged claim under the [C]onstitution or federal statute clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such a claim is wholly insubstantial and frivolous." 327 U.S. at 682-83. Additionally, the Ninth Circuit has admonished that a "[j]urisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional

3

issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." *Sun Valley*, 711 F.2d at 139. The jurisdictional issue and the substantive issues are intertwined where "a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Sun Valley*, 711 F.2d at 139).

**B.    Rule 12(b)(6).**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because the focus of a Rule 12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the Court ordinarily limits its review to the face of the complaint. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). In considering a Rule 12(b)(6) motion, the Court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable legal theory or failed to allege sufficient facts under a cognizable legal theory. *See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996); *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In pleading sufficient facts, however, a plaintiff must suggest his or her right to relief is more than merely conceivable, but plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).

## ANALYSIS

**I.    Plaintiffs' Statutory Claims Under The APA And The Medicare Act Must Be Dismissed For Lack Of Subject Matter Jurisdiction.**

As a threshold matter, Defendant contends that this Court lacks subject matter jurisdiction over Plaintiffs' statutory claims brought under the APA and the Medicare Act because Congress has precluded judicial review of the configuration of fee schedule areas. The central dispute between the parties is whether the configuration of fee schedule areas, the agency action challenged by Plaintiffs here, falls within the scope of 42 U.S.C. § 1395w-4(i)(1)(D), which precludes any judicial review of

4

"the establishment of geographic adjustment factors." Defendant contends that the configuration of fee schedule areas is a sub-component of establishing geographic adjustment factors, and therefore is outside the scope of judicial review pursuant to 42 U.S.C. § 1395w-4(i)(1)(D). Plaintiffs disagree, and contend that because the configuration of fee schedule areas is not expressly enumerated in so many words in 42 U.S.C. § 1395w-4(i)(1), Congress did not intend to prevent judicial review of how the Defendant determines and applies the fee schedule areas.

After carefully considering the parties' arguments, the Court finds that 42 U.S.C. § 1395w-4(i)(1)(D) has placed the configuration of fee schedule areas outside the scope of this Court's jurisdiction for purposes of Plaintiff's statutory claims.

### A.     42 U.S.C. § 1395w-4(i)(1) Is A Clear Prohibition Upon Judicial Review.

The relevant statute, 42 U.S.C. § 1395w-4(i)(1), provides:

> There shall be no administrative or judicial review under section 1395ff of this title or otherwise of--
>
> (A) the determination of the adjusted historical payment basis (as defined in subsection (a)(2)(D)(I) of this section),
>
> (B) the determination of relative values and relative value units under subsection (c) of this section, including adjustments under subsections (c)(2)(F), (c)(2)(H), and (c)(2)(I) of this section and section 13515(b) of the Omnibus Budget Reconciliation Act of 1993,
>
> (C) the determination of conversion factors under subsection (d) of this section, including without limitation a prospective redetermination of the sustainable growth rates for any or all previous fiscal years,
>
> **(D) the establishment of geographic adjustment factors under subsection (e) of this section**, and
>
> (E) the establishment of the system for the coding of physicians' services under this section.

(Emphasis added.)

As several courts have found, 42 U.S.C. § 1395w-4(i)(1) is a clear and comprehensive "no review" provision that directly targets all three core components of the overall formula for Part B fee reimbursement. *See Am. Med. Ass'n v. Thompson*, 2001 WL 619510 at *4 (N.D. Ill. May 29, 2001) ("*AMA*") ("the 'no review' provision in this statute is clear and comprehensive"); *see also Am. Soc'y of Dermatology v. Shalala*, 962 F. Supp. 141, 145 (D.D.C. 1996); *Am. Soc'y of Cataract and*

5

*Refractive Surgery v. Thompson*, 279 F.3d 447, 453 (7th Cir. 2002). 42 U.S.C. § 1395w-4 "could not be a more clear prohibition of judicial review." *Soc'y of Dermatology*, 962 F. Supp. at 146; *see also Painter v. Shalala*, 97 F.3d 1351,1356 (10th Cir. 1996) ("the 'no review provision' clearly indicates Congress' intent to preclude administrative and judicial review"). 42 U.S.C. § 1395w-4(i)(1) unequivocally precludes judicial review of any element listed in subsections (A) through (E), including one of the core components of the fee schedule: "the establishment of geographic adjustment factors."

### B. The Sole Use For "Fee Schedule Areas" In The Statutory Scheme Is To Help Establish And Calculate Geographic Adjustment Factors.

A review of the statutory scheme for Part B Medicare payments, located at 42 U.S.C. § 1395j-1395w-4, makes clear that the sole purpose for the existence of "fee schedule areas" is to define local geographic areas that form the basis for calculating the "geographic adjustment factors" that adjust Medicare reimbursement based on geographic variations in the costs and resources required to furnish medical items and services.

Payment for physician services under Part B is made according to a "fee schedule" published once a year. 42 U.S.C. § 1395w-4. Under the fee schedule, the amount Medicare pays for a particular type of physician's service is not uniform throughout the country. Rather, payment rates are adjusted for geographic variations in the costs and resources required to furnish medical items and services. This adjustment is accomplished through use of a "geographic adjustment factor", 42 U.S.C. § 1395w-4(e), which is determined according to a formula that includes a significant degree of judgment on the part of the Secretary. A geographic adjustment factor is established for every "fee schedule area" in the United States on the basis of the relative costs of practicing medicine, the relative costs of malpractice insurance, and the relative value of physician work effort in the different fee schedule areas. 42 U.S.C. §§ 1395w-4(e)(1)(a)(i), (ii) & (iii). The term "fee schedule area" is defined in the statutory scheme as "a locality" used " for purposes of computing payment amounts for physicians' services" under the payment regime that was replaced by the fee schedule. 42 U.S.C. § 1395w-4(j)(2).

It is evident from these statutory provisions that the establishment of fee schedule areas is a

6

subcomponent, and necessary precursor, to the establishment of geographic adjustment factors. The boundaries of fee schedule areas must be drawn before any geographic adjustment factors can be established under 42 U.S.C. § 1395w-4(e). Indeed, on the record before the Court, there does not appear to be any purpose for "fee schedule areas" in the statutory scheme other than for establishing geographic adjustment factors under 42 U.S.C. § 1395w-4(e). The only occasion to create or utilize fee schedule areas springs from the need to use to them to establish geographic adjustment factors that adjust Medicare reimbursement based on geographic variations in the costs and resources required to furnish medical items and services.

Although Plaintiffs contend the "the establishment of fee schedule areas is ancillary to the determination" of geographic adjustment factors (Opp. at 14:3-4), Plaintiffs fail to identify any other role that fee schedule areas play in the statutory scheme. When asked at oral argument, Plaintiffs were unable to identify any other role for "fee schedule areas" in the Medicare reimbursement system other than as a basis for calculating geographic adjustment factors. Moreover, Plaintiffs' ultimate purpose in challenging the boundaries of the fee schedule areas is clearly to force a recalculation of the geographic adjustment factors that apply to the Plaintiffs' provision of medical services. If Plaintiffs are not really challenging the "geographic adjustment factors" used to determine their Part B reimbursements then their lawsuit could not result in the relief that they seek, because it is only from impact of the fee schedule areas upon the determination of the geographic adjustment factors that the physician fee schedule could be changed in the manner that Plaintiffs seek. The Court is not persuaded by Plaintiffs' contention that the establishment of fee schedule areas is an agency action that somehow has significance independent of the establishment of geographic adjustment factors.[1]

///

///

---

[1] The Court finds inapposite the fact that Congress directed the Secretary, on various timetables, to review and revise other components of the geographic adjustment factor, but did not establish any time frame for reviewing or revising fee schedule areas. This contrast does not render fee schedule areas independent of the "establishment of geographic adjustment factors" that is barred from judicial review, and does not change the fact that fee schedule areas must be determined and defined before the calculation of geographic adjustment factors can take place under 42 U.S.C. § 1395w-4(e).

7

**C.   Because The Sole Purpose Of Configuring Fee Schedule Areas Is For Purposes Of Establishing Geographic Adjustment Factors, 42 U.S.C. § 1395w-4(i)(1)(D) Precludes Judicial Review Of How The Boundaries Are Drawn.**

Given that the sole purpose for defining the boundaries of fee schedule areas in the statutory scheme is to aid the Secretary's establishment of geographic adjustment factors, the Court finds that 42 U.S.C. § 1395w-4(i)(1)(D) precludes judicial review, in connection with Plaintiffs' statutory claims, of how the fee schedule area boundaries are drawn.

Consistent with other courts that have considered judicial challenges to components of the fee schedule formula, this Court finds that it cannot read 42 U.S.C. § 1395w-4(i)(1) to allow litigants to challenge specific items that are "integral to and essential components of the congressional-protected determinations" because this would frustrate the congressional mandate and defeat the Secretary's ability to make the protected determination itself. *See Am. Soc'y of Anesthesiologists v. Shalala*, 90 F. Supp. 2d 973, 976 (N.D. Ill. 2000); *Dermatology*, 962 F. Supp. at 145-46; *Cataract*, 279 F.3d at 449. "It would not make much sense for Congress to preclude review of the three main components of the statutory formula but then to allow review of challenges to the various sub-components of that formula." *AMA*, 2001 WL 619510 at *4.

Here, because defining the boundaries of fee schedule areas has no function beyond aiding in the geographic factor calculation, it would strain common sense to say that the fee schedule areas are not a part of the determination of the geographic conversion factor that has been placed outside the scope of judicial review. *See AMA*, 2001 WL 619510 at *4; *Painter*, 97 F.3d 1351 at 1356. Plaintiffs' reliance on the doctrine of *expressio unis est exclusio alterius* is misplaced in this context, given that fee schedule areas are a necessary component of an item expressly listed in the "no review" provision. Courts have appropriately declined to carve out, for judicial review, individual pieces of the three core components expressly enumerated in the "no review" clauses of 42 U.S.C. § 1395w-4(i)(1). *See Cataract*, 279 F.3d at 452-53 (finding no judicial review available for transition formula under 42 U.S.C. § 1395w-4(i)(1)(B) where formula was "an integral part of the relative value determination"); *AMA*, 2001 WL 61956 at *3-5 (finding no judicial review available for calculation that affects conversion factor rendered unreviewable by 42 U.S.C. § 1395w-4(i)(1)(C));

8

*Anesthesiologists*, 90 F. Supp. at 974-76 (finding no judicial review available for "individual strands" of the Secretary's determinations of relative value units protected under 42 U.S.C. § 1395w-4(i)(1)(B)). Here, to allow Plaintiffs to attack the boundaries of the "fee schedule areas" by means of claims brought under the APA or the Medicare Act would undermine the Secretary's ability to make the congressionally-protected determination, under 42 U.S.C. § 1395w-4(i)(1)(D), as to geographic adjustment factors. *Accord Anesthesiologists*, 90 F. Supp. 2d at 976.

In this Court's view, the wording of the no review clause found at 42 U.S.C. § 1395w-4(i)(1)(D) is even broader than the no-review clauses at issue in *Cataract*, *AMA* and *Anesthesiologists*. Whereas those clauses precluded judicial review of "the determination of relative values and relative value units" and "the determination of conversion factors", the no-review clause at issue here prevents review of "the establishment of geographic adjustment factors." *Compare* 42 U.S.C. §§ 1395w-4(i)(1)(B) & (C) *with* 42 U.S.C. § 1395w-4(i)(1)(D). The word "establishment" is a broader term that this Court reads to encompass not only the particular formulas used to calculate the geographic adjustment factors, but the establishment of particular geographic regions (fee schedule areas) across which the geographic adjustment factors are to be applied.[2]

Contrary to Plaintiffs' contention, the mere fact that "fee schedule areas" are formally defined in subsection (j) of U.S.C. § 1395w-4, rather than in subsection (e) which describes how geographic adjustment factors are to be determined, does not lend support to Plaintiffs' position that the prohibition upon judicial review of "the establishment of geographic adjustment factors under subsection (e) of this section" (42 U.S.C. § 1395w-4(i)(1)(D)) cannot extend to fee schedule areas. The fee schedule areas are incorporated into subsection (e) for purposes of determining geographic adjustment factors and have no other purpose in the statutory scheme. *Cf.* AMA, 2001 WL 619510 at *4 ("The mere fact that the SGR calculation is set forth in a separate subsection does not prove much. Although the details of the SGR calculation are not set out in [the subsection directly

---

[2] The instant case is unlike *Furlong v. Shalala*, 1996 WL 393526 (S.D.N.Y. July 12, 1996), to which Plaintiff cites, because the configuration of fee schedule areas cannot be characterized as "ancillary" to the establishment of geographic adjustment factors, given that they must be configured before geographic adjustment factors can be established. The plaintiffs in *Furlong* were challenging a policy that was utilized after the calculation of the relevant core component of the Part B fee schedule. It was therefore more reasonable to argue in *Furlong* that the policy at issue was not part of the "determination of" or "establishment of" that core component.

United States District Court
For the Northern District of California

referenced by the no-review clause], the SGR calculation is incorporated into that subsection.").

### D. The Legislative History Does Not Evidence An Intent By Congress To Permit Judicial Review Of The Boundaries Of Fee Schedule Areas.

In support of their narrow reading of the "no review" provision, Plaintiffs contend that the legislative history of 42 U.S.C. § 1395w-4(i)(1) demonstrates that Congress intended to allow judicial review of the boundaries of fee schedule areas. The Court finds this argument unpersuasive. As an initial matter, the no-review provision is sufficiently clear in its directive that the Court need not resort to legislative history to interpret it. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). But in any event, the Court disagrees with Plaintiffs' reading of the legislative record.

The initial House draft of the Omnibus Budget Reconciliation Act of 1989, which contained the statutory provision now found at 42 U.S.C. § 1395w-4(i)(1), expressly listed "the selection of fee schedule areas under subsection (c)(3)(B)" as one of the enumerated items not subject to judicial review. 135 Cong. Rec. H5984, H6023 (daily ed. Sept. 27, 1989). In contrast, the Senate version did not contain a similarly-worded prohibition. 135 Cong. Rec. S13911-04, S13928-29 (daily ed. Oct. 24, 1989). The final bill, as enacted, did not include the express prohibition on "the selection of fee schedule areas under subsection (c)(3)(B)" originally contained in the House draft. Plaintiffs contend that this legislative record indicates that Congress contemplated shielding fee schedule areas from judicial review, but ultimately decided to allow them to be subject to judicial scrutiny. *Cf. Russello v. United States*, 464 U.S. 16, 23-24 (1983) ("Where Congress includes limiting language in an earlier version of a bill, but deletes it prior to enactment, it may be presumed that the limitation was not intended.")

The Court finds the inference regarding Congressional intent advanced by Plaintiffs is unwarranted. The specific reference to "the selection of fee schedule areas under subsection (c)(3)(B)" found in the House draft appears to have been a cross-reference to another provision in the House draft, found at subsection (c)(3)(C),[3] that required that fee schedule areas be redrawn according to one of two new methods to be chosen by the Secretary. 135 Cong. Rec. H5984, H6022

---
[3] The House language's cross-reference to "subsection (c)(3)(B)" appears to include a typographical error, given that subsection (c)(3)(B) of the House draft referred to anesthesia services and bore no relation to fee schedule areas.

10

(daily ed. Sept. 27, 1989). The fact that this specific cross-reference did not make it into the final bill is more plausibly explained by the fact that the cross-referenced requirement that the Secretary redraw the boundaries also did not make it into the final bill, obviating any need for the specific reference.

Accordingly, the Court finds that 42 U.S.C. § 1395w-4(i)(1)(D) bars judicial review of Plaintiffs' fifth, sixth, and seventh causes of action, which are statutory claims premised on the APA and the Medicare Act.[4]

**II.  Plaintiffs' Due Process And Equal Protection Constitutional Claims Must Be Dismissed Because Plaintiffs Are Not "Persons" Within The Meaning Of The Fifth Amendment.**

Plaintiffs' first, second, third and fourth causes of action assert due process and equal protection claims grounded in the Fifth Amendment of the U.S. Constitution. The question of whether Congress intended 42 U.S.C. § 1395w-4(i)(1)(D) to bar judicial review of such constitutional challenges – and, if so, whether such a prohibition of judicial review would itself violate due process or separation of powers principles – presents a thorny legal issue.[5] However, at least with respect to Plaintiffs' due process and equal protection claims, the Court need not resolve this jurisdictional issue because the claims must be dismissed for an independent reason. Plaintiffs, as political subdivisions of a State, are unable to assert either due process or equal protection claims against the federal government.

**A.  As Political Subdivisions Of A State, The Plaintiff Counties Are Not "Persons" Entitled To Bring Fifth Amendment Due Process Claims.**

Plaintiffs' due process claims necessarily arise under the Fifth Amendment because they are brought against the federal government. However, it has long been settled that States are not

---

[4] At oral argument, Plaintiffs cited *Bedford County Memorial Hospital v. HHS*, 769 F.2d 1017 (4th Cir. 1985) in support of their contention that at least one theory of liability in Plaintiffs' statutory claims might survive even if 42 U.S.C. § 1395w-4(i)(1)(D) precludes judicial review of the boundaries of fee schedule areas. Having reviewed *Bedford*, the Court finds that it lends no support to Plaintiffs' contention. *Bedford* did not involve a statute barring judicial review and that court did not address any issues involving non-reviewability.

[5] "Construing a statute to preclude constitutional review would 'raise serious questions concerning its constitutionality,' and therefore, whenever possible, statutes should be interpreted as permitting such review." *U.S. v. Emerson*, 846 F.2d 541, 544 (9th Cir. 1988) (quoting *Johnson v. Robison*, 415 U.S. 351, 366 (1974)).

11

"persons" within the meaning of the Due Process clause of the Fifth Amendment. *See South Carolina v. Katzenbach*, 383 U.S. 301, 323-24 (1966); *Premo v. Martin*, 119 F.3d 764, 771 (9th Cir. 1997); *Ariz. State Dep't of Pub. Welfare v. HEW*, 449 F.2d 456, 478 (9th Cir. 1971). Federal courts considering the issue have also found – based on reasoning that this Court finds persuasive – that a political subdivision of a State also cannot constitute a "person" entitled to assert a due process violation under the Fifth Amendment. For example, in *City of Sault Ste. Marie v. Andrus*, 532 F. Supp. 157 (D.D.C. 1980), the court ruled that the plaintiff, a municipality, did not constitute a "person" within the meaning of the Fifth Amendment and therefore could not assert a due process challenge. *See id.* at 167. The court explained:

> It is difficult to imagine how a municipality can be a "person" under the Fifth Amendment if its progenitor, the state, cannot be. . . . [A] state cannot confer a constitutional status upon a municipality which the state does not itself enjoy, since the municipality performs the same function as the state.

*Id.*

Similarly, in *Creek v. Village of Westhaven*, 1987 WL 5429 (N.D. Ill. Jan. 15, 1987), the court observed that "[t]he notion that a political body created by the state enjoys protection, by virtue of the due process clause, from enforcement of the laws of its own or some other sovereign is not supported by either the case law or the language of the clause." *Id.* at *7 (holding that municipality could not assert a due process violation); *see also El Paso County Water Imp. Dist. No. 1 v. International Boundary and Water Comm'n*, 701 F. Supp. 121, 123-24 (W.D. Tex. 1988) (holding that El Paso County Water Improvement District Number 1, a political subdivision of the State of Texas, could not assert a Fifth Amendment due process claim).

Plaintiffs' arguments as to why California counties should be considered "persons" under the Due Process clause of the Fifth Amendment are unconvincing. Plaintiffs offer no analysis of federal constitutional law. Instead, they cite to the directive in Federal Rule of Civil Procedure 17(b) that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held . . . ." Plaintiffs then point to provisions in California state law that indicate that California counties, although they are political subdivisions of the state, are considered quasi-corporations with the power to sue and be sued under state law. *See California Government Code* §§ 23000 & 23004;

12

*Pacific Gas & Elec. Co. v. County of Stanislaus*, 16 Cal. 4th 1143, 1150-59 (1997) (holding California county could bring action under state and federal antitrust laws). However, in this Court's view, neither the Federal Rules of Civil Procedure, nor California state law, inform the federal constitutional analysis of what entities qualify as a "person" for purposes of the Due Process clause of the Fifth Amendment. Although Congress can of course permit the states to determine whether their political subdivisions will constitute "persons" entitled to sue under federal statutes, and the California state legislature can confer to its own political subdivisions the power to sue under state statutes, neither the Federal Rules of Civil Procedure, nor the acts of the California state legislature, can confer the federal constitutional status to sue as a "person" under the Due Process clause of the Fifth Amendment. Taken to its logical end, Plaintiffs' argument that this constitutional determination depends on application of Federal Rule of Civil Procedure 17(b) would allow the States themselves to declare themselves "persons" under the Fifth Amendment's Due Process clause, a result flatly inconsistent with the Supreme Court's constitutional analysis. *See South Carolina*, 383 U.S. at 323-24.

The Court therefore finds that Plaintiffs, all California counties, do not constitute "persons" under the Due Process clause of the Fifth Amendment. The Court accordingly must dismiss their due process claims.

**B.     Because Equal Protection Limitations Apply To The Federal Government Only Through Operation Of The Due Process Clause Of The Fifth Amendment, Plaintiffs' Equal Protection Claims Also Fail.**

Because Plaintiffs' equal protection claims are also predicated on the Due Process clause of the Fifth Amendment, they must be dismissed for the same reason. Constitutional limitations based on equal protection grounds apply to the federal government only through the Due Process clause of the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975). As the Ninth Circuit recently observed in a case where equal protection claims were asserted against a federal agency:

> Although the Bureau of Reclamation, being a Federal agency, is not subject to the strictures of the Equal Protection Clause, [i]n *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), the Supreme

13

> Court indicated that the Fifth Amendment's Due Process Clause, subjects the federal government to constitutional limitations that are the equivalent of those imposed on the states by the Equal Protection Clause of the Fourteenth Amendment. We therefore read [Plaintiff's] challenge as a Fifth Amendment claim.

*Consejo de Desarrollo Economico de Mexicali, A.C. v. U.S.*, 482 F.3d 1157, 1170 n.4 (9th Cir. 2007) (internal quotation marks and citations omitted).

As discussed above, however, the Plaintiffs here, as political subdivisions of a State, do not qualify as "persons" within the meaning of the Due Process clause of the Fifth Amendment, and therefore are unable to bring an equal protection challenge against the federal government.

Accordingly, the Court must dismiss Plaintiffs' equal protection claims as well.

**III.  To The Extent Plaintiffs' "Unlawful Delegation" Claim Sounds In Constitutional Law And Might Survive 42 U.S.C. § 1395w-4(i)(1)(D), It Is Not Adequately Pleaded.**

Plaintiffs' eighth cause of action alleges that Medicare has unlawfully delegated its duty to reconfigure the localities used to calculate Part B Medicare payments to state medical associations. (Complaint ¶¶ 360-367.) However, neither the precise legal theory that Plaintiffs contend renders the delegation "unlawful", nor whether that legal theory is premised on constitutional principles, are clear from the Complaint, as currently pleaded. The eighth cause of action characterizes Medicare's allegedly unlawful delegation of authority as a violation of 5 U.S.C. § 706(2)(A) and (C), which are provisions of the APA. (Complaint ¶ 362.) 5 U.S.C. § 706(2)(A) and (C) authorize a Court to "hold unlawful and set aside agency action, findings, and conclusions found to be" either "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (subsection (A)) or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" (subsection (C)). Noticeably absent is any reliance by Plaintiffs on 5 U.S.C. § 706(2)(B), which authorize a Court to hold unlawful and set aside agency action that is "contrary to constitutional right, power, privilege, or immunity." Thus, as currently pleaded, Plaintiffs' eighth cause of action appears to assert solely a statutory basis for relief. However, some ambiguity in Plaintiffs' pleading of the eighth cause of action is created by paragraph 365 of the Complaint, which indirectly alludes to, but does not directly plead, a constitutional underpinning for the eighth cause of action. Paragraph 365 reads:

14

> Medicare delegated its authority to initiate locality changes to the state medical associations even though President George H. W. Bush deemed a similar delegation by Congress in 1990 to be unconstitutional. President Bush went so far as to direct Medicare not to enforce a provision of the 1990 Act because it vested significant authority to execute federal law to persons not appointed by the President, and attempted to confer lawmaking power on individual members of Congress. If Congress cannot constitutionally delegate authority to state medical associations to initiate locality changes, then Medicare certainly lacks the authority to do so.

For the reasons set forth above in Section I, to the extent Plaintiffs' eighth cause of action for "unlawful delegation" rests upon a statutory basis, the Court lacks subject matter jurisdiction to hear it because of the no-review provisions of 42 U.S.C. § 1395w-4(i)(1)(D). To the extent Plaintiffs intended to rely on a constitutional theory as a basis for their eighth cause of action, Plaintiffs have not adequately alleged the existence and contours of the alleged constitutional violation upon which their claim might be able to proceed. The Court will therefore dismiss Plaintiffs' eighth cause of action, but, unlike the other causes of action, finds it appropriate to grant Plaintiffs leave to amend the "unlawful delegation" claim to clarify its legal basis and constitutional underpinnings, if any.[6]

Defendant's other challenges to the "unlawful delegation" claim raise factual disputes that fall outside the scope of a Rule 12 motion. Defendant contends that the Secretary has retained ultimate decisional authority and merely "considered" private views, but Plaintiffs' Complaint contends that the Secretary went much farther than merely considering private views by "delegat[ing] its authority to initiate locality changes to state medical associations (Complaint ¶ 362) and "retain[ing] no authority, final or otherwise, over the action or inaction of those state medical associations with respect to the locality issue" (Complaint ¶ 363). For purposes of this Rule 12 motion, the Court must regard Plaintiffs' factual allegations as true, and cannot dismiss the unlawful delegation claim on the grounds advanced by Defendant.

///

---

[6] Until the constitutional dimensions, if any, of Plaintiffs' "unlawful delegation" allegations are clearer, the Court will not attempt to resolve whether 42 U.S.C. § 1395w-4(i)(1)(D) would prevent judicial review of such a claim. The Court also finds it premature to attempt to determine whether the presentation and exhaustion requirements of 42 U.S.C. § 1395ff(b)(1)(A) have been met with respect to any constitutional claim for "unlawful delegation" that Plaintiffs may be able to plead.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion.[7] The Court **DISMISSES** Plaintiffs' statutory claims (the fifth, sixth, and seventh causes of action) for lack of subject matter jurisdiction under 42 U.S.C. § 1395w-4(i)(1)(D). The Court **DISMISSES** Plaintiffs' Fifth Amendment due process and equal protection claims (the first, second, third and fourth causes of action) for failure to state a claim because the named Plaintiffs, which are all political subdivisions of the State of California, do not qualify as "persons" within the meaning of the Fifth Amendment. Finally, the Court **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' unlawful delegation claim (the eighth cause of action) because Plaintiffs have not adequately pleaded the claim in a manner that demonstrates it has a constitutional basis that might confer subject matter jurisdiction on this Court.

Plaintiffs shall filed their amended complaint, if any, **within twenty (20) days of entry of this Order**.

**IT IS SO ORDERED.**

Dated: March 11, 2008

                                                    MARTIN J. JENKINS
                                                    UNITED STATES DISTRICT JUDGE

---

[7] The Court also **DENIES AS MOOT** Plaintiffs' Motion To Strike. (Docket No. 42.) The declaration of William Hardwick, which Plaintiffs seek to strike, related only to Defendants' assertion that certain of the Plaintiffs lacked standing because they do not operate facilities that are suppliers participating in Medicare Part B. Defendant withdrew this challenge at oral argument. The other materials that Plaintiffs seek to strike related to Rule 12 arguments that this Court need not reach given the disposition of Plaintiffs' claims described in this Order.